IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WESTON SANFORD, et al.,

                Plaintiff,              Case No. 3:03 CV 7572

    -vs-

                                            MEMORANDUM OPINION

SYLVANIA CITY SCHOOL BOARD
OF EDUCATION,

                Defendant.

KATZ, J.

      Pending before the Court is the August 4, 2004 Report and Recommendation of the Magistrate Judge recommending granting the Defendant's motion for summary judgment (Doc. No. 10). Plaintiffs filed their Objections to the Report and Recommendation on August 19, 2004 (Doc. No. 20), and Defendants filed a Response on August 31, 2004 (Doc. No. 21). In accordance with *Hill v. Duriron Co*., 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a de novo determination of the Magistrate's findings as to which Plaintiff objects.

## BACKGROUND

      Plaintiffs Weston and Laura Sanford, residents of Sylvania Ohio, are the parents of Jacob Sanford, a ninth-grade student in the Sylvania Schools. (Doc. No. 18, pp. 1-2). Jacob has been diagnosed with a bipolar disorder, Tourettes Syndrome, obsessive-compulsive disorder and attention-deficit-hyperactivity disorder (Doc. No. 18, pp 1-2). These disorders constitute a disability under 20

U.S.C. § 1401(3). As a result, Jacob is entitled to the development and implementation of an individualized education program ("IEP") in order to meet his personal educational needs.

Defendant, a political subdivision providing a system of public education for Sylvania residents, is required to provide Jacob with special education and related services as well as to ensure that Jacob and his parents are guaranteed procedural safeguards with respect to the provision of a free appropriate education. Included within such procedural safeguards is the right to an impartial due-process hearing to address the statutory requirements. (Doc. No. 1, ¶¶ 7 & 8); 20 U.S.C. § 1415(a) (2004);20 U.S.C. § 1415(b) (2004).

On May 21, 2003, Plaintiffs requested a due-process hearing on behalf of their son, in accordance with the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§1415 et seq., and Ohio Revised Code §§ 3323.05 et seq. (Doc. No. 18, p. 1). They requested that an impartial hearing officer conduct the hearing in order to resolve issues related to Jacob's educational, behavioral, and disciplinary plans. *Id.* On June 5, George F. Sprenger ("Sprenger") was appointed as impartial hearing officer. (Doc. No. 18, p. 11). Upon Plaintiffs' request for an extension of time, Sprenger postponed the hearing beyond the statutorily prescribed forty-five day period. (Doc. No. 18, p. 8). On July 8, 2003, both parties participated in a mediation process with a mediator from the Ohio Department of Education, Division of Exceptional Children. After a proposed settlement agreement by Defendant (Doc. No. 17, Exhibit A), a counteroffer by Plaintiff (Doc. No. 17, Exhibit B), and another proposed agreement by Defendant, the parties came to a settlement (Doc. No. 18, p. 23-24). Among other things, the parties agreed that a qualified behavioral psychologist would conduct an independent behavioral assessment, the staff would be trained regarding Jacob's disability, and a modified physical education

program would be incorporated into Jacob's curriculum. *Id.* Defendant refused, however, to include an offer for payment of attorney fees within the settlement agreement. *Id.* After the settlement was reached, Sprenger entered an order dismissing the hearing on September 22, 2003. The order, which had a copy of the settlement agreement stapled to it, reads as follows:

> Upon the Settlement Agreement having been entered into by Petitioners, Weston and Laura Sanford, by and through their Attorney, Thomas J. Zraik, and, the Sylvania City School District, by and through its attorney, Cheryl F. Wolff, (a copy thereof is attached to this order), and, for good cause shown,
>
> It is Ordered that the request for a due process hearing is hereby dismissed.

(Doc. No. 18, p. 21).

Plaintiff then filed the instant action seeking an award of attorney fees and costs. (Doc. No. 1). Defendant filed a Motion for Summary Judgment (Doc. No. 10), as to which Plaintiff filed an Opposition (Doc. No. 14) and Defendant filed a Reply (Doc. No. 17).

The matter was referred to Magistrate Judge Vernelis K. Armstrong, who issued her Report and Recommendation (Doc. No. 19) recommending that this Court grant the motion for summary judgment and deny Plaintiff's request for attorney fees. In her report, the Magistrate Judge found that the Plaintiffs' claims for attorney fees are barred because Plaintiffs are not prevailing parties under 20 U.S.C. § 1415(i). This matter is now before the court on Plaintiff's objection to the decision of the Magistrate Judge (Doc. No. 20), as to which Defendants filed a response (Doc. No. 21).

### PLAINTIFF'S OBJECTIONS

*A. Plaintiff's Factual Objections*

3

The Sanfords' first three objections challenge the Magistrate Judge's characterization of the facts and events which led to this lawsuit.

*1. Objections No. 1, 2, and 3*

The Sanfords' first objection is based on the Magistrate Judge's statement of the dates when a written offer of settlement was made. Specifically, Plaintiffs object to the following sentence: "Defendant made a written offer of settlement on July 8, 2003." (Doc. 20, citing Doc. 19 at p. 2).

Second, the Sanfords object to the following statement in the Magistrate Judge's report: "The parties were unable to resolve the dispute at the initial conference conducted on July 22, 2003 by the impartial hearing officer." (Doc. 20, citing Doc. 19 at p. 2). Plaintiffs admit that an error in their original complaint might have led to this mistaken statement of the events that occurred.

The Sanfords' third factual objection is based on the following sentence: "Plaintiffs accepted the proposed settlement offer made by Defendant through a mediator on August 6, 2003." (Doc. 20, citing Doc. 19 at p. 2). Plaintiffs argue that no mediator was involved in the development or presentation of the final version of the settlement agreement.

After reviewing the record and both parties' briefs, it is clear that a mediation conference took place on July 8, 2003, with both parties and a mediator appointed by the Ohio Department of Education, (Doc. No. 1, ¶ 2; Doc. No. 4, ¶ 2; Doc. No. 11, ¶¶ 5,6). Subsequently, Defendants made an offer of settlement on July 18, 2003 (Doc. No. 11 ¶ 7; Doc. No. 4, Exhibit A). Defendants finalized their offer on August 1, 2003 (Doc. No. 18, Exhibit 6). Plaintiffs accepted the final proposed settlement on August 6, 2003 (Doc No. 1, ¶ 2; Doc. No. 4, ¶ 2, Exhibit E).

4

The above misstatements in the Magistrate Judge's report are merely, as Plaintiffs acknowledge, "technicalities," (Doc. No. 20, p. 3) and do not affect the substance of her findings. They are noted here only for a clarification of the record. However, Plaintiff's first three factual objections are well-taken.

*2. Objection No. 4*

The Sanfords' fourth objection is based on the following sentence of the Magistrate Judge's Report: "Plaintiffs withdrew their request for a due process hearing and the due process hearing was dismissed on or about September 25, 2003." (Doc. No. 20, citing Doc. No. 19 at p. 3). Plaintiffs claim that the impartial hearing officer ("IHO") incorporated the settlement agreement into the Order, and that this incorporation is not reflected in the Magistrate Judge's Report. This objection goes to the ultimate issue and will be discussed below.

B.  *Plaintiff's Legal Objections*

Typically, the "American Rule" leaves parties in the United States responsible for their own attorneys' fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Given this rule, the courts follow a "general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States*, 511 US. 809, 819 (1994). However, the IDEA, 20 U.S.C. §1415(i)(3)(B) (2003) provides the necessary explicit statutory authority by allowing: "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."

The Magistrate, relying on *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001) and *Toms v. Taft*, 338 F.3d 519

5

(6th Cir. 2003), found that Plaintiffs could not pass the threshold requirement to be deemed prevailing parties. In *Buckhannon*, the Court determined that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." 532 U.S. 598, 604 (2001) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93). On the other hand, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change" sufficient to be considered a prevailing party. *Id.* at 605.

In *Toms*, the Sixth Circuit held that a prisoner and his fiancee were not prevailing parties, although prison officials agreed to a special procedure in a settlement to allow them to marry. 338 F.3d 519, 521, 528-30. The Sixth Circuit then gave examples of the reasons the settlement in *Toms* did not meet the requirement set forth in *Buckhannon*. "[N]o judicial oversight was involved in enforcing the settlement, and the district court did not issue any order altering the defendants' conduct." *Id*. at 529. As a result, "[a]lthough the settlement conference occurred at the district court, with the district judge's involvement, the resulting settlement did not bear the necessary 'judicial imprimatur.'" *Id.*

Plaintiffs assert that *Buckhannon* does not apply to this case. While *Buckhannon* was contextually a Fair Housing Amendments Act (FHAA) and Americans with Disabilities Act (ADA) case, the Court mentioned several other statutes where the prevailing-party language was the same, thus allowing for the extension of its ruling into other arenas. *Id.* at 602-03. Further, the First, Second, Third and Seventh Circuits have already applied the *Buckhannon* analysis specifically to the fee-shifting provisions of the IDEA. See *Doe v. Boston Pub. Schs.*, 358 F.3d 20, 25-26, 30 (1st Cir. 2004)

(quoting *Me. Sch. Admin. Dist. v. Mr. & Mrs. R.*, 321 F.3d 9, 14 (1st Cir. 2003) for the proposition that "[b]ecause this provision employs the phrase 'prevailing party'--a term of art--it must be interpreted and applied in the same manner as other federal fee-shifting statutes that use the same phraseology," and explaining that, therefore, "IDEA plaintiffs who achieve their desired result via private settlement may not, in the absence of judicial imprimatur, be considered 'prevailing parties'"); *J.C. Reg'l Sch. Dist. No. 10, Bd. of Educ.*, 278 F.3d 119 (2d Cir. 2002) (noting that "standards used to interpret the term 'prevailing party' under any given fee-shifting statute 'are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party"'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983)); *John T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 560-61 (3d Cir. 2003) (finding that "[b]y expressly linking its holding to other 'prevailing party' fee-shifting statutes, the *Buckhannon* Court encourages an expansive reading," and concluding that, therefore, "[a]lthough John T. undoubtedly realized an objective of his litigation upon obtaining an acceptable IEP . . . the result was not 'judicially sanctioned'"); *T.D. v. Lagrange Sch. Dist. No. 102*, 349 F.3d 469, 476 (7th Cir. 2003) (holding that the limiting provisions in the IDEA "do not clearly indicate that the term 'prevailing party' was intended to encompass anything more in the IDEA than in any of the other 'prevailing party' fee-shifting statutes").

Moreover, this Court has already applied *Buckhannon* to the fee-shifting provisions of the IDEA. *See Van Aucken v. Skiver*, No. 3:02 CV 7380, 38 IDELR 95 (N.D. Ohio 2002) (holding that enforceable judgements on the merits or court-ordered consent decrees which create a material alteration in the legal relationship of the parties are required in order to attain the status of a prevailing party).

7

The reasoning of those four circuits, as well as the recognition by the Sixth Circuit that "[a]lthough *Buckhannon* involved the award of attorney fees under a different statute than is at issue here, the Court expressly stated that all statutes . . . that authorize attorney's fees to the 'prevailing party' are to be treated consistently," *Chambers v. Ohio Dep't of Human Servs.*, 273 F.3d 690, 693 n.1 (6th Cir. 2001) (citing *Buckhannon*, 532 U.S. at 603 n. 4), persuades this Court to apply *Buckhannon* to the IDEA.

*Buckhannon* held that in order to be a "prevailing party," a party must be "successful" in the sense that it has been awarded some relief by a *court.* 532 U.S. at 603-604. *Buckhannon* acknowledged, however, that a party benefitting from a settlement agreement, for example, could be a "prevailing party," provided the "change in the legal relationship of the parties" was in some way "*judicially sanctioned*." *Id.* at 605 (emphasis added).

Plaintiff asserts that the terms of the agreement were satisfied while the IHO maintained jurisdiction over the case, and that the IHO dismissed the case only after the provisions of the settlement agreement were fulfilled. However, the letter requesting dismissal of the due process hearing contained no language to that effect. Plaintiff's counsel did not ask the IHO to reserve dismissal until a date certain, or until specific acts took place or responsibilities were fulfilled. No language to that effect was present in the order itself. The IHO did not claim to retain jurisdiction over the case in order to enforce the settlement agreement, nor did he issue an order requiring Defendant to comply with the terms of the settlement. He merely dismissed the case as was asked of him, without reserving any authority to enforce the agreement. That the school district acted more swiftly in complying with the agreement than the IHO did in dismissing the hearing does not mean that the IHO judicially supervised Defendant's compliance.

8

As in *Toms*, and following the *Buckhannon* analysis, the settlement in the present case did not bear the necessary judicial *imprimatur* for a prevailing party determination to be made.

Plaintiffs' next argument is that the IDEA authorizes provision of attorneys' fees at any administrative proceeding. In support of this proposition, they cite 20 U.S.C. § 1415(i)(3). However, § 1415(i)(3)(B) discusses individuals who are eligible for attorneys' fees, and allows the court to award fees only to a *prevailing party*. Without the judicial *imprimatur* necessary for a prevailing party, the Court may not award fees at all, for any court or administrative proceeding. Plaintiffs next attacks the Magistrate's report by stating that she included no rationale to explain "why this lower court should now override long-standing Sixth Circuit cases recognizing the validity of settlement agreements [to determine prevailing party status] in the context of the IDEA." (Doc. No. 20, p 6-7). To the contrary, as has been discussed above, settlement agreements *can* be used to determine prevailing party status, as long as those agreements are judicially sanctioned. However, in this case, there is no judicial sanction, so there is no prevailing party.

Finally, Plaintiff makes a brief policy argument that the IDEA's procedural safeguards would be damaged without a grant of attorneys' fees in this case. This argument "assumes that litigation decisions are driven by a desire to collect or to avoid paying attorney's fees--and not by the litigants' interests." *John T.,* 318 F.3d at 557-58. Even under the fee shifting provisions of 20 U.S.C. § 1415(i)(3), attorney's fee awards are not mandatory and ultimately are awarded at a *court's discretion*. Because attorney's fees are never guaranteed, this Court joins the Third Circuit in "question[ing] that litigation would be protracted for the sole purpose of winning an award." *John T.,* 318 F.3d at 558.

## CONCLUSION

9

For the reasons stated above, this Court adopts the Report and Recommendation of the Magistrate Judge. Defendants' motion for summary judgment (Doc. No. 10) is granted.

IT IS SO ORDERED.

s/ *David A. Katz*  
DAVID A. KATZ  
SENIOR U. S. DISTRICT JUDGE